IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF OKLAHOMA

ERMA ALDABA, PERSONAL
REPRESENTATIVE AND NEXT
OF KIN TO JOHNNY MANUEL
LEIJA, DECEASED,
      PLAINTIFF,

vs             CASE NO. 6:12-cv-00085-FHS

THE BOARD OF MARSHALL
COUNTY COMMISSIONERS; JAMES ATNIP;
STEVE BEEBE; Marshall County
Sheriff ROBERT WILDER, in his individual
and official capacity; THE CITY OF MADILL,
a municipal corporation; BRANDON
PICKENS; Madill Chief of Police
JAMES FULLINGIM, in his
individual and official capacity,
      DEFENDANTS.

## PLAINTIFF'S RESPONSE TO
## DEFENDANTS PICKENS AND CITY OF MADILL'S MOTION FOR SUMMARY
## JUDGMENT AND BRIEF IN SUPPORT

COMES NOW, the Plaintiff, by and through her attorneys undersigned and for her

RESPONSE TO DEFENDANTS PICKENS AND CITY OF MADILL'S MOTION FOR

SUMMARY JUDGEMENT, would state the following in support thereof:

## PLAINTIFF'S RESPONSE TO DEFENDANT PICKENS AND CITY OF MADILL'S
## STATEMENT OF UNDISPUTED FACTS

1. Plaintiff admits paragraphs 1-20, 22-29, 32-33, 35-36.

2. Plaintiff denies that paragraph (21) is an undisputed fact. Defendant Pickens states

that Dr. Conley only told him that Mr. Leija was undergoing treatment, was possibly on drugs

and that if he left the hospital he might die. Defendants Pickens states that he never asked any

1

questions about Mr. Leija's condition. (Ex. 1, Pickens depo, pg. 16, line 1 through pg. 18 line 4). Defendant Beebe states that he didn't know anything about Mr. Leija's condition and that he didn't ask although he agrees that such information should have been important to him. (Ex. 2, Beebe depo., pg. 26, line19 through pg. 27, line12). Defendant Atnip states that he only heard an unknown *female* voice (Dr. Conley and Nurse Turvey are male) say that if Mr. Leija leaves he might die. (Ex. 3, Atnip depo., pg. 42, line 2-22)

3. Plaintiff denies that paragraph (30) is an undisputed fact. The video recording of the confrontation between Mr. Leija and the Defendants does not indicate any officers ever backing away from Mr. Leija. (Ex. 5)

4. Plaintiff denies that paragraph (31) is an undisputed fact. Defendant Pickens was asked to describe everything he saw and heard with regard to Mr. Leija. Defendant Pickens does not relate that Defendant Atnip and Beebe ever told Mr. Leija to get on his knees, to step back, to stop or that Mr. Leija ever moved toward them. (Ex. 1, Pickens depo., pg. 27, line 21 through pg. 29, line 11)

5. Plaintiff denies that paragraph (34) is undisputed. Defendant Pickens testified that after Mr. Leija was shot with the taser one of the prongs embedded in his stomach and Mr. Leija yelled "not to do that." (Ex. 1, Pickens depo, pg. 29, line 10-18)

## PLAINTIFF'S STATEMENT OF DISPUTED FACTS

In addition to the above described facts in dispute the following material facts are also in dispute:

1. The Defendants offered different reasons for tasering, tackling and attempting to arrest Mr. Leija:

2

a. According to Defendant Pickens his only reason to arrest Mr. Leija was to protect his health, not to arrest him for any crimes. Defendant Pickens admitted that when he ordered Mr. Leija to stop walking away from him Mr. Leija was not armed, had committed no crimes and was wearing a hospital gown. (Ex. 1, Pickens depo., pg. 20, line 1 through pg. 24, line 20)

b. According to Defendant Beebe the Defendants were trying to subdue him because they didn't want him to hurt himself. Additionally Defendant Beebe claims he was concerned for other hospital patients' safety. (Ex. 2, Beebe depo., pg. 23, line 1-24) Defendant Beebe states that Mr. Leija was trying to sling blood at the Defendants and was progressing towards the Defendants and that this was a crime of assault on an officer. (Ex. 2, Beebe depo., pg. 37, line 12 through pg. 38 line 3) However Defendant Beebe admits that he never told the OSBI agents who interviewed him that he saw Mr. Leija commit any crimes nor did he write in his own report that he saw any crimes by Mr. Leija. (Ex. 2, Beebe depo., pg. 40, line 10-18)

c. Defendant Atnip states that he never made any determination that Mr. Leija was a danger to himself. (Ex. 3, Atnip depo., pg. 64 line 2-6). Deputy Atnip states that the only reason for ordering Mr. Leija to his knees and for Beebe to shoot Mr. Leija with his taser was to affect an arrest on Mr. Leija for attempting to sling blood on Defendant Pickens. (Ex.3, Atnip depo., pg. 64 line 13 through pg. 67, line 18; pg. 73 line 4 through pg. 75, line 17)

## ARGUMENT AND AUTHORITIES

Plaintiff has made claims that Defendants Pickens, along with Defendants Atnip and Beebe, violated Mr. Leija's constitutional rights and has brought her claims pursuant to Title 42 § 1983. Specifically Plaintiff alleges that the Defendants violated Mr. Leija's rights in two specific

instances: 1) the warrantless and unreasonable seizure of Mr. Leija, and 2) that the Defendants used excessive force in their seizure of Mr. Leija. Defendant Pickens' Motion for Summary Judgment addresses both of these claims.

**A. Unlawful Seizure**

Defendant Pickens claims that he was justified in stopping Mr. Leija because he was not competent to make medical decisions for himself. Defendant Pickens had insufficient information in which to determine that there was probable cause to believe that Mr. Leija was incompetent to make his own medical decisions.

Mr. Leija has a right to refuse medical treatment. <u>Cruzan v. Director, MDH</u>, 497 U.S. 261 (1990). "If the law recognizes the right of an individual to make decisions about her life out of respect for the dignity and autonomy of the individual, that interest is no less significant when the individual is mentally or physically ill." <u>In re. K.K.B.</u>, 1980 OK 7, para. 24. Defendants are correct when they state that if the officers had probable cause exists to believe that Mr. Leija was a danger to himself they could make at least an initial investigative seizure of some kind. However, that seizure and the force used to accomplish it still has to be objectively reasonable under the circumstances.

Defendant Pickens had insufficient information upon which to make a decision that Mr. Leija was incompetent to make medical decisions. Defendant Pickens only remembers being told that Mr. Leija was very sick and might die if he left the hospital; that Mr. Leija was acting as if he were on drugs; that Mr. Leija was saying that the medical staff was trying to poison him and/or kill him; that he wanted to leave and wanted to see his family. There is no indication that Mr. Leija did not know where he was at. He knew he was in a hospital and he wanted to leave.

4

The Defendant never sought any real information about the mental condition of Mr. Leija. As such Pickens was unable to make a rationally based decision that probable cause existed to believe that Mr. Leija was incompetent. Without a sufficient basis to make this decision Defendant Pickens had no authority to seize Mr. Leija.

### B. Excessive Force

Claims of excessive force by police officers are analyzed under the Fourth Amendment's "objective reasonableness" standard. In determining whether or not the officer's use of force was "reasonable", the sole issue is whether the officer's actions were "objectively reasonable" in light of the facts and circumstances confronting him at the time. The officer's subjective intent is not relevant. Graham v. Connor, 490 U.S. 386 (1989). Even where a Plaintiff is convicted of evading an officer and resisting arrest his claims of excessive force against the police will not be barred. Martinez v. City of Alburquerque, 184 F.3d 1123 (10th Cir. 1999). The issue of whether excessive force was used has always been seen as a factual inquiry which is best answered by the finder of facts. Quezada v. County of Bernalillo, 944 F.2d 710 (10th Cir. 1991). Summary judgment should not be granted "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Part of the confrontation between Mr. Leija and the Defendants was recorded by hospital cameras. (Ex. 4) The recording shows the initial contact between Pickens and Mr. Leija and then the arrival of Atnip and Beebe. At no time does Defendant Beebe step backwards and away from Mr. Leija. He can be seen reaching for his taser. Another part of the recording shows the three Defendants tackling, tasering and wrestling Mr. Leija to the ground and then holding him down

to apply handcuffs. This Court should consider the video in its determination of whether there is evidence to support a claim for excessive force.

The question on the issue of the underlying constitutional violation for excessive force is whether the officer's actions were "objectively reasonable." See Graham. This is and has always been a jury question. See Quezada. All of the circumstances that were available to be known by the Defendants must be considered. The Defendants contact with Mr. Leija did not occur in a bar, or on the side of the road or inside the home of a domestic disturbance call. It occurred in a hospital just steps away from Mr. Leija's hospital room. Mr. Leija was critically ill with double pneumonia and had been admitted as a patient.

Defendant Pickens never asked any questions about Mr. Leija's condition. He didn't ask whether Mr. Leija had a lung condition, heart condition, blood disorder or brain disorder. He did know that the hospital staff was concerned about Mr. Leija's health and he was told that Mr. Leija's condition could be deadly for him.

The Defendants also knew that Mr. Leija was unarmed and had committed no crimes prior to their arrival. They knew he did not want any further treatment. They heard him state that he was being poisoned and that the hospital staff were trying to kill him. The Defendants knew that no judge had ordered Mr. Leija to receive treatment against his will.

The question for the jury is whether or not, considering all of these circumstances, the Defendants used more force than was necessary to subdue Mr. Leija. Plaintiff submits that a reasonable juror could find that shooting a man twice with a taser, tackling him to the ground, holding him down and handcuffing him while he is deathly ill in a hospital is objectively unreasonable and was more force than necessary. Defendant Pickens did not use a taser but he

6

participated and was a part in the seizure and all other uses of force. He certainly did not try to intervene and stop Defendant Beebe from using his taser.

The irony here is that the Defendants partially claim that their goal was to protect Mr. Leija from harm. Yet, none of them knew anything about his condition other than that he was deathly ill. Rather than watching him and trying to get more information, they surrounded him and refused to let him leave. The Defendants seem to believe that if Mr. Leija was allowed to walk down the hall that he was going to disappear into thin air. He had no keys, no shoes and no way to go anywhere.

If the seizure of Mr. Leija was unconstitutional then any amount of force used to subdue Mr. Leija was excessive and unlawful. Atkins v. New York City, 143 F.3d 100 (2nd Cir. 1998). If the seizure of Mr. Leija was permissible then there are several factors to consider in determining the legality of the force that was used.

There are three "non exclusive" factors that are relevant to an excessive force inquiry: 1) The severity of the crime at issue, 2) whether the suspect poses an immediate threat to the safety of the officers or others, and 3) whether he is actively resisting arrest or attempting to evade arrest by flight. Bryner v. Utah, 429 Fed.Appx. 739 (10th Cir. 2011). These factors are usually relevant but are not "exclusive." In this case there should be a fourth factor to consider–the physical condition and location of the arrestee.

In reviewing the severity of the crime at issue it must be noted that the officers were not investigating any crimes by their own admission. At no time did any of the officers ever even consider that a crime was being or had been committed until after they had seized Mr. Leija and ordered him to stop leaving. At that point the Defendants give different accounts as to what

happened and why they did what they did. First, Defendant Pickens has given no testimony that Mr. Leija ever committed a crime. He states that he participated in the seizure only to subdue Mr. Leija so that he could be forced to receive treatment. Defendants Atnip and Beebe both have testified that they believed that they saw Mr. Leija commit a crime by shaking his fist at Defendant Pickens while there was blood on it. Atnip and Beebe testified that they heard Leija say "I'll fight you" to Defendant Pickens. Pickens has not given such testimony. He only reports that he heard Mr. Leija say "this is my blood." In any event, none of this occurred until the Defendants stopped Mr. Leija as he walked away from them. They all agree that he had committed no crimes and was unarmed when the first seizure took place. It is disputable whether any crime occurred at all and a jury should be allowed to consider this factor.

Second, as to whether Mr. Leija posed an immediate threat to the safety of the officers, Mr. Leija was unarmed. He had blood on his hands but there is no evidence that he was using that as a "weapon". No blood got on any of the Defendants. He did not try to hit anyone. He was acting aggressively but that is not an automatic indicator of "imminent threat of safety" to the officers. He had no knife, no gun, no baton or other actual weapon and he was surrounded by three officers who had barred him from leaving.

Third, there is evidence that Mr. Leija never resisted any efforts by the officers. First, he stopped when he was ordered–not once but twice. Second, only Atnip and Beebe testified that they told him to get on his knees. Defendant Pickens gave no such testimony that any statements or orders were made by any officer. Finally, after he was initially shot with the taser he screamed "don't do that" but he did not turn and run. He merely started to step away from the officers. That is when the three of them pinned him to a wall and tasered him again, this time in the back.

A reasonable jury could find that these Defendants unnecessarily escalated this situation and that they completely ignored the most important factor confronting them–the physical condition and location of Mr. Leija. Again, Mr. Leija was a voluntary patient in a hospital. The Defendants were not there to investigate a crime. They knew he was deathly ill. Defendant Pickens gave the following testimony about his knowledge of Mr. Leija's condition:

> Q. Did you ever consider what effect the shot with a taser and then wresting him to the ground against his will by the three of you would have on his health?
> A. No.

(Ex. 1, Pickens depo., pg. 31, line 12-16)

Defendant Atnip stated that he did not know Mr. Leija's condition, did not know he had a severe lung condition, did not know that he was having trouble breathing. (Ex.3 , Atnip depo., pg. 59, line 7-22). Defendant Beebe testified as follows:

> Q. At any time before he lost consciousness what had you learned about his medical condition, other than he was a patient at the hospital?
> A. I didnt' know anything about his medical condition.
> Q. Did you ask anybody?
> A. No, sir.
> Q. Why not?
> A. Officer Pickens and Deputy Atnip were up there talking to him first.
> Q. Would it be important for you to know what a medical condition was before you went up to the hospital and shot someone with a Stinger?
> A. Yes.
> Q. But you didn't know.
> A. No.

(Ex. 2, Beebe depo., pg. 26, line 19 through pg. 27, line 12).

Most excessive force cases occur when the arrestee/suspect is being taken into custody for a crime or is fleeing a crime scene. In those situations the three factors mentioned above are appropriate. However, in this case there are other factors that the officers should have considered when determining the appropriate level of force. Mr. Leija was a patient in a hospital. The

Defendants should have attempted to learn more about his condition as any reasonable officer would have. They should have then taken his health into consideration, as any reasonable officer would have, before using the level of force that they did.

Had any of these Defendants truly considered who they were dealing with, a hospital patient with a serious and potentially deadly lung condition, they would have realized that it was unreasonable to shoot him with a taser and wrestle him to the ground. Instead they should have merely monitored Mr. Leija. There was no reason not to allow him to walk freely. He was not threatening anyone. He was merely asking for his family. Any reasonable officer would have gotten more information from the hospital staff and then realizing that Mr. Leija had a deadly lung condition they should have given him a wide berth but continued to monitor him until the situation resolved itself without violence.

### C. Qualified Immunity

**Illegal Seizure**

The issue here is whether an officer would have or should have known that the seizure of Mr. Leija, whom the officers knew very little about, as he was trying to leave his hospital room was a violation of his rights. The Defendants claim that they were justified in stopping Mr. Leija because he was not competent to make medical decisions for himself. However, Defendant Beebe acknowledges that before Mr. Leija was initially stopped by the Defendants he had committed no crimes; that Beebe knew nothing about his condition; that Beebe would have no authority as a law enforcement officer to tell Mr. Leija to stop as he walked away from his room; that he does not know what authority Defendant Pickens had to tell Mr. Leija to stop; that Mr. Leija had the right to leave the hospital at any time and that it would have been important to

know something about Mr. Leija's condition but Beebe never did ask anybody. (Ex. 2, Beebe depo., pg. 25, line 15 through pg. 27, line 12) Defendant Atnip admits that he never made any determination that the Defendant was not competent. He only wanted to subdue him to arrest him for what he perceived as a felony assault on an officer. (Ex. 3, Atnip depo., pg. 74, line 18 through pg. 75, line 17)

Defendant Atnip admits that he never determined that Mr. Leija was a danger to himself. (Ex. 3, Atnip depo., pg. 64, line 2-6). Only after the initial seizure took place by Defendant Pickens, for which there was insufficient justification, did Atnip feel that he gained probable cause to seize Mr. Leija. He states that he was justified in seizing Mr. Leija because he was "slinging" blood at Defendant Pickens. However, Defendant Pickens never describes having blood slung at him. In any event, if the initial seizure was unjustified, Mr. Leija's actions in responding to the illegal seizure can not give the officers new justification to seize him.

Even so, Mr. Leija has a right to refuse medical treatment. Cruzan v. Director, MDH, 497 U.S. 261 (1990). "If the law recognizes the right of an individual to make decisions about her life out of respect for the dignity and autonomy of the individual, that interest is no less significant when the individual is mentally or physically ill." In re. K.K.B., 1980 OK 7, para. 24. These rights were established well before 2011 and Defendant Pickens is not entitled to qualified immunity.

The Defendants had insufficient information upon which to make a decision that Mr. Leija was incompetent to make medical decisions. Defendant Atnip never determined that Mr. Leija was a danger to himself. Defendant Pickens only remembers being told that Mr. Leija was very sick and might die if he left the hospital; that Mr. Leija was acting as if he were on drugs;

that Mr. Leija was saying that the medical staff was trying to poison him and/or kill him; that he wanted to leave and wanted to see his family. There is no indication that Mr. Leija did not know where he was at. He knew he was in a hospital and he wanted to leave. These Defendants never sought any real information about the mental condition of Mr. Leija. As such they were unable to make a rationally based decision that probable cause existed to believe that Mr. Leija was incompetent. Without a sufficient basis to make this decision they, by their own admission, had no authority to seize him.

**Excessive Force**

The issue here is whether a reasonable officer would know that it would violate a person's rights to find a patient at a hospital who is trying to leave, learn nothing about their condition other than that the patient has a deadly condition, order the patient to stop, shoot him twice with a taser and then, three officers against one patient, tackle him to the ground and handcuff him.

"Use of objectively unreasonable force is clearly barred under existing law." See, Graham v. Connor, 490 U.S. 386 (1989). . The application of the qualified immunity defense in excess force cases is controlled by the same standard as the alleged unconstitutional violation--whether the officer's conduct was objectively unreasonable. Mich v. Brewer, 76 F.3d 1127 (10th Cir. 1996). Summary judgment on qualified immunity is not appropriate when there are facts in dispute that are material to a determination of reasonableness as there are here. Thomas v. Roach, 163 F.3d 137 (2nd Cir. 1999).

In cases of excessive force the qualified immunity inquiry becomes indistinguishable from the merits of the underlying action. Therefor, if a jury question exists as to whether the

officers's use of force was objectively reasonable, summary judgment on qualified immunity is not possible. Guffey v. Wyatt, 18 F.3d 869 (10th Cir. 1994)

Obviously every set of facts is different. This Court should find that the question of whether the use of force was objectively reasonable should be left to a jury. As such, Pickens is not entitled to qualified immunity on the issue of excessive force. Even if this Court finds that the seizure of Mr. Leija was not unconstitutional the question of whether the force used was reasonable must still be answered separately.

**D. Pendant Tort Claim against City of Madill**

Defendants are correct that the issue of tort claim immunity for the City of Madill is dependant on whether the Defendants were providing "protection" as found in Title 51 O.S. § 155(6) and described in Morales v. City of Oklahoma City, 230 P.3d 869 (Okla. 2010) rather than a "law enforcement function."

In Morales the Oklahoma Supreme Court found that an officer could not be protected by Section 155(6) for negligent acts while making an arrest that caused injury. The Court found that making an arrest is a law enforcement function which is different than law enforcement "protection" as identified in Section 155(6). Morales at para. 15.

Other cases have made distinctions between negligent police and fire "functions" which is not realized by Section 155(6) and law enforcement or fire "protection" services, which is. In Prichard v. City of Oklahoma City, 1999 OK 5, the municipality sought protection under 155(6) for negligent acts of a police officer who failed to get medical care for an arrestee. The Court found that the failure to get medical care was not part of the "method of providing...police...protection" as contemplated by Section 155(6). Id. In Salazar, cited above,

13

the Court found that "statutory immunity for providing protective services (*police or fire*) is not co-extensive with a blanket immunity from common-law negligence for carrying out law enforcement duties." Salazar, para. 27. The Salazar Court specifically made a distinction between negligently carrying out functions of a city that may involve fire or police type services and negligently providing or failing to provide protective services.

Here two of the Defendants, Atnip and Beebe both testified that they were not trying to seize Mr. Leija to protect him but rather to arrest him for what was perceived as a crime against Defendant Pickens. (Ex. 2, Beebe depo., pg. 37, line 12 through pg. 38 line 3) Defendant Atnip states that he never made any determination that Mr. Leija was a danger to himself. (Ex. 3, Atnip depo., pg. 64 line 2-6). Deputy Atnip states that the only reason for ordering Mr. Leija to his knees and for Beebe to shoot Mr. Leija with his taser was to affect an arrest on Mr. Leija for attempting to sling blood on Defendant Pickens. (Ex.3, Atnip depo., pg. 64 line 13 through pg. 67, line 18; pg. 73 line 4 through pg. 75, line 17) This is contradictory to Defendant Pickens' description of why he was trying to subdue Mr. Leija. This creates a question of fact as to what purpose the Defendants, all of them, had in trying to subdue Mr. Leija–either for his own "protection" or for some other reason. As such, summary judgment is inappropriate.

## CONCLUSION

Defendants Pickens and City of Madill's Motions for Summary Judgment should be overruled. Questions of fact, including the objective reasonableness of Defendant Pickens' and use of force against Mr. Leija, should be determined by a jury. The Defendants are not entitled to qualified immunity. Summary judgment should be denied.

Respectfully Submitted,

/s/ Jeremy Beaver
Jeremy Beaver, OBA #18645
Gotcher & Beaver
Attorneys for Plaintiff
PO Box 160
McAlester, OK. 74502
(918) 423-0412
jeremy@gotcher-beaver.com

CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of January, 2013, based on the electronic records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

**Philip W.Anderson**
**Chris J. Collins**
429 NE 50th Street, 2nd Floor
Oklahoma City, OK. 73105-1815
Phone (405)524-2070
Fax (405)524-2078
E-mail panderson@czwglaw.com
czwg@czsglaw.com
kerry@czsglaw.com
cjc@czwglaw.com

Attorney for Defendants, Board of County Commissioners of Marshall County, James Atnip, Steve Beebe, and Marshall County Sheriff Robert Wilder, in his individual and Official Capacities

**Eric D. Janzen / Clark W. Crapster**
Steidley & Neal
CityPlex Towers, 53rd Floor
2448 E. 81st Street
Tulsa, OK 74137
(918) 664-4612
Fax No. (918) 664-4133
E-Mail: edj@steidley-neal.com
cwc@steidley-neal.com

Attorney for Defendants, The City of Madill, Brandon Pickens and Madill Chief of Police, James Fullingim

S/ Jeremy Beaver
By: Jeremy Beaver