IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ERMA ALDABA, Personal Representative )
and Next of Kin to JOHNNY MANUEL )
LEIJA, Deceased, )
                                                            )
       Plaintiff, )
                                                            )
v. ) No. CIV-12-85-FHS
                                                           )
THE BOARD OF MARSHALL COUNTY )
COMMISSIONERS; JAMES ATNIP; STEVE )
BEEBE; THE CITY OF MADILL; and BRANDON )
PICKENS, )
                                                           )
      Defendants. )

**OPINION AND ORDER**

     This is an action brought by Plainitff Erma Aldaba, as the personal representative and next of kin to Johnny Manuel Leija ("Leija"), the decedent, pursuant to 42 U.S.C. § 1983 for claimed violations to Leija's constitutional rights in connection with an altercation involving the individual defendants and Leija on March 24, 2011, while Leija was an admitted patient at Integris Marshall Memorial Hospital ("Integris") in Madill, Oklahoma. Plaintiff alleges that Defendants James Atnip ("Atnip") and Steve Beebe ("Beebe"), Marshall County deputy sheriffs, and Brandon Pickens ("Pickens"), a City of Madill police officer, violated Leija's constitutional rights by (1) executing a warrantless and unreasonable seizure of Leija, and (2) using excessive force in connection with their seizure of Leija. Plaintiff also asserts pendent state law tort claims against Defendants, the Board of Marshall County Commissioners ("Marshall County"), and the City of Madill ("the City") for the alleged negligent acts of their

1

respective law enforcement officials, Atnip, Beebe, and Pickens.[1]
Before the Court for its consideration are the following motions:
(1) Marshall County's Motion For Summary Judgment (Dkt. No. 49),
(2) Atnip's and Beebe's Motion For Summary Judgment (Dkt. No. 51),
and (3) the City's and Brandon Pickens' Motion For Summary Judgment
(Dkt. No. 53). Having reviewed the parties' respective submissions
in connection with these motions, the Court finds summary judgment
is appropriate as to Plaintiff's section 1983 claims for unlawful
seizure and the pendent state tort claims, but that questions of
fact preclude the issuance of summary judgment in favor of Atnip,
Beebe, and Pickens on Plaintiff's section claims for excessive
force.

**Background**

The events that transpired on March 24, 2011, are, in large
part, undisputed.[2] On the morning of March 24, 2011, Leija
voluntarily presented himself to the Integris emergency room
accompanied by his girlfriend, Olivia Arellano ("Arellano"). Leija

---

[1] Additional claims and defendants were included in
Plaintiff's Complaint. On December 21, 2012, the parties filed a
Stipulation of Dismissal With Prejudice (Dkt. No. 56) eliminating
several of those claims and parties. By virtue of this
Stipulation, Plaintiff dismissed all constitutional claims
pursuant to 42 U.S.C. § 1983 against the City, Marshall County,
James Fullingim, and Robert Wilder. As the Stipulation
recognizes, the claims remaining are the section 1983 claims
against Atnip, Beebe, and Pickens for unlawful seizure and
excessive force, and the pendent tort claims against the City and
Marshall County.

[2] Plaintiff has admitted most of the facts set forth by the
defendants in their motions. The Court's recitation of facts is
framed by these admissions, the undisputed facts established by
the record, and the Court's viewing of the hospital video
recording submitted by the parties.

was evaluated and it was determined that he was suffering from hypoxia (low oxygen level) and he was diagnosed with severe pneumonia in both lungs and dehydration. As a result, Leija was admitted to Integris for further evaluation and treatment. Upon admission at 11:00 a.m., Leija was cooperative, responsive, and in full agreement with the decision to admit him into the hospital for treatment. Leija was given breathing treatments, put on oxygen through his nostrils, and given intravenous antibiotic treatment. As a result of the breathing treatments and being put on oxygen Leija's oxygen saturation level increased form 77% to 88%. When an individual's oxygen saturation level is low enough, one's mental status can be affected. By lunchtime on March 24, 2011, Leija was still receptive to the treatment being provided to him by the medical staff at Integris and was polite and cooperative in his interaction with the staff. Around 5:35 p.m., Leija's mood and demeanor began to change when Leija complained of extreme thirst. Around 6:00 p.m., Nurse Melissa Farmer ("Farmer") observed that Leija had disconnected his oxygen and severed his IV tubing. Farmer also noticed that Leija was bleeding from his arms and that there was blood on the floor and the toilet. Farmer reconnected Leija's oxygen and IV tubing and Leija's oxygen saturation level increased from 84% to 92%. During this process, Leija appeared confused and he asked for his girlfriend, Arellano, several times. Leija became very anxious, but refused to take any medication to ease his anxiety. Farmer contacted Dr. John Conley ("Conley") about Leija's condition and Dr. Conley ordered that Leija be administered 1 mg of Xanax. At 6:20 p.m., Farmer attempted to give Leija the Xanax tablet but he refused the tablet, took out his oxygen, and yelled at Farmer that he didn't need the medicine and that she was just telling him lies and more secrets. Leija continued to be uncooperative and his aggressiveness increased. Leija continued yelling and told the nursing staff not to approach

him.  He claimed the staff was trying to poison him.

Farmer contacted Dr. Conley again for assistance and Nurse Matt Turvey ("Turvey") was sent to Leija's room.  Turvey attempted to calm Leija, but Leija began yelling "I am Superman.  I am God.  You are telling me lies and trying to kill me."  Turvey observed that Leija had once again removed his IV tubing and that there was blood on the bathroom wall, toilet, and floors.  Turvey and Dr. Conley were concerned that the low oxygen level was causing diminished capacity in Leija.  Dr. Conley believed Leija was harming himself by removing his oxygen and IV and refusing the medication.  Dr. Conley directed Turvey to administer an injection of Haldol and Ativan in order to calm Leija so that he could be put back on oxygen and have his IV hooked up again.  Leija would not allow Turvey to administer the medication and Turvey did not believe that he and Dr. Conley could restrain Leija in order to administer the injection.  With Dr. Conley's approval, Turvey called law enforcement for assistance with a disturbed patient at 6:36 p.m.  Atnip and Beebe were eating dinner with Pickens when Pickens received the call to assist the hospital with a combative person.  Pickens informed Atnip and Beebe of the call and they agreed to assist Pickens.[3]

At 6:40 p.m., Dr. Conley arrived at Leija's room to assist Turvey and he observed Leija state that the medical staff was trying to poison him, that he was God and Superman, and that only water was pure enough for him.  Dr. Conley observed blood on the

---

[3] Some confusion exists in the record as to who received the call for assistance.  Atnip and Beebe state Pickens received the call while Turvey states he notified the Marshall County Sheriff's Office for assistance with a disturbed patient.  In any event, they were all notified and responded to the call.

4

ground and on the toilet and that Leija's underwear was pulled down. Dr. Conley became increasingly concerned for Leija's health given the behavioral and personality changes in Leija from earlier in the day when he was admitted. Dr. Conley observed Leija's aggressive behavior and left Leija's room when Leija started to step towards him. It was Dr. Conley's opinion that he and Turvey could not secure Leija to his bed to treat and evaluate him without the assistance of law enforcement officials.

Leija exited his room in his hospital gown and began walking down the hall. At this point, Atnip, Beebe, and Pickens arrived at the scene and observed Leija standing in the hall, yelling and screaming that people were trying to poison and kill him. Leija was visibly agitated and upset. Pickens was informed by medical personnel that Leija was ill and that he could die if he left the hospital. Pickens attempted to persuade Leija to return to his room, but Leija refused and said the hospital staff was trying to kill him. Pickens informed Leija that no one was trying to kill him and that he needed to let the hospital staff help him. Leija continued down the hallway toward the lobby area.[4] Leija continued with his aggressive behavior by pulling the remaining IV from his arms causing blood to come out. After speaking with Pickens, Leija faced the officers and clenched and shook his fists. Leija caused more bleeding when he removed the gauze and tape from his arms, and he raised his arms and stated that this was his blood. Atnip and Beebe contend they gave Leija several commands to step back, calm down, and get on his knees. They warned Leija that if he did not

---

[4] The video recording shows Leija continuing down the hall, but he remains out of view of the camera until he is seen being subdued by all three officers. Thus, the video fails to capture that portion of the altercation where the defendants contend Leija became increasingly agitated, aggressive, and confrontational.

5

comply they would use a Taser on him. After Leija did not comply with their commands, Beebe fired the Taser at Leija with one prong hitting him in the upper torso. The Taser did not appear to affect Leija. At this point, Atnip attempted to restrain Leija by grabbing his right arm around the wrist and elbow area. Pickens grabbed Leija's left arm. Atnip and Pickens attempted to do an armbar takedown of Leija. Leija continued to struggle with the officers and they were unable to move his arms behind his back, but they were able to turn him against the lobby wall face first. Beebe then administered a "dry" sting on Leija's back shoulder area in order to relax him so they could move his arms back. The "dry" sting had no effect. Atnip pushed his leg into the bend of Leija's right leg and the officers were able to turn Leija around and he was pushed to the floor. Atnip and Pickens held Leija's arms while Beebe attempted to handcuff him. Beebe was able to place a handcuff on Leija's right wrist and Pickens pulled on Leija's left arm as Leija was resisting Pickens' grip. While this struggle was going on, Turvey appeared and injected Leija with the shot of Haldol and Ativan. Leija then went limp, made a grunting noise, and vomited a clear liquid. The officers moved away from Leija and medical personnel immediately began CPR in an effort to revive Leija. The attempts to revive Leija were unsuccessful and those efforts were stopped at 7:29 p.m. The medical examiner determined Leija's cause of death as respiratory insufficiency secondary to pneumonia. He further determined that the manner of death was natural.

**Summary Judgment Standards**

The standards relevant to the disposition of a case on summary judgment are well established. Having moved for summary judgment in their favor under Rule 56 of the Federal Rules of Civil

Procedure, defendants' initial burden is to show the absence of evidence to support Plaintiff's claims. Celotex v. Catrett, 477 U.S. 317, 325 (1986). Defendants must identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which establish the absence of any genuine issue of material fact. Universal Money Centers v. AT&T, 22 F.3d 1527, 1529 (10th Cir.), cert. denied, 115 S.Ct. 655 (1994) (quoting Fed. R. Civ. P. 56(c)). defendants' need not negate Plaintiff's claims or disprove her evidence, but rather, their burden is to show that there is no evidence in the record to support her claims. Celotex, 477 U.S. at 325. Plaintiff, as the nonmoving party, must go beyond the pleadings and "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [she] carries the burden of proof." Applied Genetics v. First Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990).

Summary judgment is not appropriate if there exists a genuine material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51 (1986). "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Thomas v. IBM, 48 F.3d 478, 486 (10th Cir. 1995) (quoting Anderson, 477 U.S. at 248). In this regard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the Plaintiff. Deepwater Invs. Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

As part of the summary judgment motion, the individual defendants claim an entitlement to qualified immunity. The affirmative defense of qualified immunity is available to all government officials. Harlow v. Fitzgerald, 457 U.S. 800 (1982). This immunity is an immunity from suit and not merely a defense to liability. Pueblo Neighborhood Health Centers v. Losavio, 847 F.2d 642, 644-45 (10th Cir. 1988) and England v. Hendricks, 880 F.2d 281 (10th Cir. 1989), cert. denied, 493 U.S. 1078 (1990). The test the court must apply is an objective one which inquires into the objective reasonableness of the official's actions. Harlow, 457 U.S. at 816. Government officials performing discretionary functions will not be held liable for their conduct unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818; see also Clanton v. Cooper, 129 F.3d 1147, 1153 (10th Cir. 1997)(quoting Harlow).

In assessing a request for summary judgment on qualified immunity grounds, the Court must determine whether the facts, taken in the light most favorable to the Plaintiff, establish a violation of a federal statutory or constitutional right by the particular defendant under consideration. Saucier v. Katz, 533 U.S. 194, 201 (2001), *overruled in part by* Pearson v. Callahan, 555 U.S. 223 (2009). Additionally, the Court must make the determination as to whether the federal statutory or constitutional right at issue was "clearly established" at the time the particular defendant allegedly committed the violation. Id. at 201. While the Supreme Court in Saucier required that the determination of a violation of a federal right be the threshold inquiry, with the issue of whether the right was clearly established being the second part of the two-step analysis, the Supreme Court later held "that the Saucier protocol should not be regarded as mandatory in all cases,

8

[however] we continue to recognize that it is often beneficial." Pearson, 555 U.S. at 236.

**Illegal Seizure**

Plaintiff contends Leija was subjected to an unlawful seizure by Atnip, Beebe, and Pickens. The Court disagrees and finds Plaintiff has failed to satisfy her burden of establishing a constitutional violation for an illegal seizure claim. The Fourth Amendment right to be free from an unreasonable seizure applies "when officers use physical force to subdue a person or when the individual submits to the officers' assertion of authority." Pino v. Higgs, 75 F.3d 1461, 1467 (10th Cir. 1996). This Fourth Amendment right "is not limited to criminal cases, but applies whenever the government takes a person into custody against [his] will." Id. Not every seizure of an individual by law enforcement officials, however, is a violation of the Fourth Amendment. The seizure must be unreasonable to violate the Fourth Amendment. Id.

In the context of a seizure or detention of an individual for mental evaluation or medical care, it is appropriate for law enforcement officials to seize such individual if the officials "have probable cause to believe that the person presents a danger to himself or others." Meyer v. Board of County Com'rs of Harper County, Okla., 482 F.3d 1232, 1237 (10th Cir. 2007); see Pino, 75 F.3d at 1468 ("The state has a legitimate interest in protecting the community from the mentally ill and in protecting a mentally ill person from self-harm."). Oklahoma law mirrors this "probable cause" standard. Under Oklahoma law "[a]ny person who appears to be or states that such person is mentally ill, alcohol-dependent, or drug-dependent to a degree that immediate emergency action is necessary may be taken into protective custody and detained . . .

9

.″ Okla.Stat.tit. 43A, § 5-207(A).  Furthermore, with respect to the actions of law enforcement officials, Oklahoma law provides "[a]ny peace officer who reasonably believes that a person is a person requiring treatment as defined in Section 1-103 of this title shall take the person into protective custody."  Okla. Stat.tit. 43A, § 5-207(B).  Under Okla. Stat.tit. 43A, § 1-103(3), "'Mental illness' means a substantial disorder of thought, mood, perception, psychological orientation or memory that significantly impairs judgment, behavior, capacity to recognize reality or ability to meet the ordinary demands of life."

Based on the undisputed facts in the record, the Court concludes the seizure of Leija did not violate the Fourth Amendment as Atnip, Beebe, and Pickens acted reasonably under the circumstances given that probable cause existed for taking Leija into protective custody.  Leija was demonstrating aggressive behavior, mental instability, and irrational thinking.  He had removed his oxygen and IV tubes against the directives of the medical staff and he was making statements which were delusional and irrational.  The medical staff believed he was harming himself and was placing his health at great risk by his behavior. Believing that Leija was experiencing a substantial mental disorder which was affecting his ability to make sound judgments, the medical staff sought the assistance of law enforcement officials to take Leija into protective custody so that the medical staff could properly evaluate and treat Leija.  The officers were informed that assistance was needed with a disturbed patient. Upon their arrival at the hospital, the officers were confronted with an agitated and combative individual who was yelling and screaming that people were trying to poison and kill him.  At least one of the officers was informed by the medical staff that Leija could die if he was allowed to leave the hospital.  In the officers' presence, Leija

10

pulled a remaining IV tube from his arm and began to bleed. He also removed the gauze and tape from his arms causing more bleeding. Given these undisputed facts, it was clearly reasonable for the officers to act in the manner they did in attempting to seize Leija for his own protection. The officers were confronted with an emergency situation involving a person exhibiting signs of a mental illness which impaired his ability to recognize his need for medical treatment. Clearly, probable cause existed for the officers to attempt to take Leija into protective custody for evaluation purposes as he was posing a threat to his own medical health.[5] The Court therefore concludes that Atnip, Beebe, and Pickens did not violate Leija's Fourth Amendment rights when they seized him for protective custody purposes.[6]

**Excessive Force**

Plaintiff claims the officers subjected Leija to excessive force in violation of the Fourth Amendment when they seized him at the hospital. The court's initial focus is on whether Plaintiff has alleged sufficient facts to establish a constitutional

---

[5] This objective probable cause determination is not affected by the stated justification of Atnip for the seizure, i.e., that Leija was assaulting Pickens by slinging blood.

[6] The Court recognizes Plaintiff's argument concerning the right of an individual to refuse medical treatment. See, Cruzan v. Director, Missouri Dept't of Health, 497 U.S. 261 (1990); see Granato v. City and County of Denver, 2011 WL 820730 *7 ("Although couched in somewhat tentative and speculative terms, Cruzan nevertheless appears to recognize a constitutional right of a competent person to refuse undesired medical treatment."). The present case, however, does not involve a competent individual's refusal of medical treatment. The undisputed facts establish that the officers were dealing with an individual suffering from a mental impairment who was unable to make an informed decision about his medical care.

violation.  A claim of excessive force is governed by the "reasonableness standard" of the Fourth Amendment.  <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989).  In <u>Graham</u>, the Supreme Court set forth the test for determining whether a police officer's use of force was constitutionally excessive in terms of "whether the officer's actions [were] objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Id</u>. at 397 (quotations omitted). Thus, the relevant question with respect to Defendants is whether the force they applied to seize Leija was "objectively reasonable in light of the facts and circumstances confronting [them]." <u>Olsen v. Layton Hills Mall</u>, 312 F.3d 1304, 1314 (internal quotation marks and citations omitted).  This reasonableness standard is clearly established for purposes of a section 1983 action, <u>Wilson v. Meeks</u>, 52 F.3d 1547, 1552 (10th Cir. 1995), *abrogated on other grounds by*, <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), and it requires courts to balance several factors including the severity of the crime, the degree of threat the subject poses to the safety of the officer and the public, and the subject's cooperation or resistance.  <u>Graham</u>, 490 U.S. at 396-97; <u>Olsen</u>, 312 F.3d at 1314; <u>Latta v. Keryte</u>, 118 F.3d 693, 701 (10th Cir. 1997).

Summary judgment on an excessive force claim under section 1983 may not be granted where "*any* genuine issue of material fact remains - regardless of whether the potential grant would arise from qualified immunity or from a showing that the officer merely had not committed a constitutional violation." <u>Olsen</u>, 312 F.3d at 1314 (emphasis in original)(citing <u>Allen v. Muskogee</u>, 119 F.3d 837, 839 (10th Cir. 1997).  The present case presents many material disputed facts as to the objective reasonableness of the force by Atnip, Beebe, and Pickens.  Primarily, the record is in dispute as to the *degree* of resistance exhibited by Leija after being confronted by the officers.  The video shows Leija merely walking

12

away from the officers. The gap in the video recording results in a failure to have an objective viewing of what transpired after the time Leija walked away from the officers and up until the point where the officers are seen apprehending Leija. The testimony of the officers is not consistent as to the nature of the aggressive behavior of Leija during this critical gap in the video. Additionally, the record is in dispute as to the degree of threat Leija posed to the officers or the public. Leija was a hospital patient. He was not armed in any fashion. While it is alleged that he was using his blood as a weapon, there is no evidence that any blood was spattered on any of the officers. Finally, an evaluation of the reasonableness of the officers' actions must be made in the context of Leija's medical condition. The record reflects that Leija was suffering from a significant medical condition which severely comprised his health. The officers' knowledge of this condition – and their efforts to ascertain information about Leija's condition before attempting to use any degree of force on him – are issues of material fact which remain in dispute. Consequently, the Court finds that material disputed facts remain which preclude the issuance of summary judgment in favor of Atnip,, Beebe, and Pickens on Plaintiff's excessive force claim.

**Pendent State Tort Claims**

Plaintiff asserts pendent state tort claims for negligence against Marshall County and the City. Invoking the "protective function" immunity provision of the Oklahoma Governmental Tort Claims Act ("OGTCA"), Okla.Stat.tit. 51, § 155(6), Marshall County and the City contend they are entitled to summary judgment on Plaintiff's tort claims as their respective officers were providing law enforcement protection in connection with their encounter with

13

Leija. The Court agrees. Section 155(6) of the OGTCA provides the state or a political subdivision immunity for "the method of providing police, law enforcement or fire protection." In <u>Schmidt v. Grady County</u>, 943 P.2d 595 (Okla. 1997), the Oklahoma Supreme Court addressed a situation where a plaintiff was injured after a Grady County deputy sheriff had taken the plaintiff "into custody to protect her from harming herself or others and from being harmed by others." <u>Id</u>. at 596. The plaintiff in <u>Schmidt</u> was injured when she either jumped or fell out of the deputy sheriff's patrol vehicle after being placed in the front seat without any type of restraint. The Oklahoma Supreme Court applied the immunity provision of section 156(6) of the OGTCA and concluded, "[w]e hold subsection 156(6) provides immunity for a political subdivision for liability for personal injuries resulting from the acts of its employees acting within the scope of their employment in taking into protective custody and transporting a person to the county jail." <u>Id</u>. at 598. Similarly, the Court finds Marshall County and the City are entitled to this "protective function" immunity as the Court has previously determined in the context of Plaintiff's illegal seizure claim that Atnip, Beebe, and Pickens were justified in attempting to take Leija into protective custody for the purposes of further medical evaluation and treatment. Summary judgment is therefore appropriate on Plaintiff's pendent state tort claims against Marshall County and the City.

**<u>Conclusion</u>**

Based on the foregoing reasons, the Court finds that summary judgment is appropriate as to Plaintiff's section 1983 claims for illegal seizure and her pendent state tort claims for negligence. Summary judgment is not appropriate on Plaintiff's section 1983 claims for excessive force. Consequently, the Court makes the

following orders:

1. Marshall County's Motion For Summary Judgment (Dkt. No. 49) is granted as to Plaintiff's pendent state tort claim and Marshall County is dismissed from this suit;

2. Atnip's and Beebe's Motion For Summary Judgment (Dkt. No. 51) is granted as to Plaintiff's section 1983 illegal seizure claim and denied as to Plaintiff's section 1983 excessive force claim; and

3. The City's and Brandon Pickens' Motion For Summary Judgment (Dkt. No. 53) is granted as to Plaintiff's pendent state tort claim against the City, granted as Plaintiff's section 1983 illegal seizure claim, and denied as to Plaintiff's section 1983 excessive force claim.

It is so ordered this 5th day of April, 2013.

*Frank H. Seay*
United States District Judge
Eastern District of Oklahoma